**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUN 20 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 17-50417 |
| Plaintiff-Appellant, | D.C. No. 2:16-cr-00468-ODW-1 |
| v. | |
| TAVON DEJUAN PICKETT, AKA Bucket and ROBERT ENNIS GOREE, | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted June 7, 2018
Pasadena, California

Before: TALLMAN and NGUYEN, Circuit Judges, and BENNETT,** District
Judge.

The United States appeals the district court's pretrial dismissal of the

indictment against Tavon Pickett and Robert Goree on the grounds of outrageous

government conduct.  This case stems from an undercover operation by the Bureau

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Mark W. Bennett, United States District Judge for the
Northern District of Iowa, sitting by designation.

of Alcohol, Tobacco, Firearms, and Explosives ("ATF") where a confidential informant ("CI") purchased fifty-nine firearms from Pickett, Goree, and other members of the Mona Park Crips gang in Compton, California. We have jurisdiction under 28 U.S.C. § 1291. We reverse, vacate the order of dismissal, and order reassignment to a different district judge.

1.      The district court erred in concluding that the government's conduct met the "extremely high standard" to dismiss the indictment. *United States v. Garza-Juarez*, 992 F.2d 896, 904 (9th Cir. 1993) (quoting *United States v. Smith*, 924 F.2d 889, 897 (9th Cir. 1991)). The government's conduct here does not go beyond the bounds of what we found acceptable in *United States v. Black*, 733 F.3d 294 (9th Cir. 2013). Each of the six *Black* factors weighs in favor of finding that the government's conduct in Mona Park was not outrageous. *Id.* at 303.

The CI solicited the purchase of firearms in Mona Park, and Pickett and Goree "responded with enthusiasm." *Id*. at 307. Whether or not Pickett and Goree had ever dealt in firearms before, they both sold firearms to the CI "willingly and without pressure." *See Shaw v. Winters*, 796 F.2d 1124, 1125 (9th Cir. 1986). As in *United States v. Pedrin*, Pickett and Goree were brought into the crime by co-conspirators, not the government, and readily agreed to participate in the sale of firearms. 797 F.3d 792, 797 (9th Cir. 2015). The actions of Pickett and Goree are sufficient to satisfy the individualized suspicion factor.

2

In determining the nature of the government's involvement, courts look to the duration, nature of the participation, and necessity of the government's participation in the criminal enterprise. *Black*, 733 F.3d at 308–09. Here, ATF purchased firearms from Pickett and Goree for less than a year. *Cf. Greene v. United States*, 454 F.2d 783, 786 (9th Cir. 1971) (finding an operation that lasted over two years was "of [an] extremely long duration").

"The extent to which the government encouraged a defendant to participate in the charged conduct is important, with mere encouragement being of lesser concern than pressure or coercion." *Black*, 733 F.3d at 308. There is no evidence of government coercion or pressure here. "[T]he government proposed the [firearms sales], and the defendants eagerly jumped at the opportunity." *Id.*

The government's involvement after the initial offer was minimal. Pickett and Goree approached the CI about purchasing their firearms, they found the source of arms in Arizona, they proposed the prices and available guns, and they facilitated the purchases at Goree's house.

Finally, Pickett and Goree had all the skills and expertise necessary to conduct illegal firearms sales. Goree had a source of firearms in Arizona and extensive knowledge about guns. *Cf. United States v. Twigg*, 588 F.2d 373, 376 (3d Cir. 1978) (noting that it was government officials who made the purchasing arrangements to facilitate the scheme). Pickett claimed he had other purchasers

3

waiting in the wings if the CI did not purchase the offered guns. *See United States v. Stenberg*, 803 F.2d 422, 430 (9th Cir. 1986).

Any concerns about the government's role in creating the crime were ameliorated by the defendants' unprompted and continuous offers to sell firearms, admissions recorded on tape that they had previously sold firearms and had other buyers, and the fact that they were brought into the scheme by other defendants. *See Black*, 733 F.3d at 305–07.

Applying the *Black* factors, the government's conduct here was not outrageous. In light of our binding precedent, the government's conduct in this case does not violate "fundamental fairness, shocking . . . the universal sense of justice." *See Shaw*, 796 F.2d at 1125 (internal quotation marks omitted); *see also Smith*, 924 F.2d at 897; *United States v. Simpson*, 813 F.2d 1462, 1465–71 (9th Cir. 1987); *United States v. Ramirez*, 710 F.2d 535, 539–41 (9th Cir. 1983). The district court was obligated to follow it.

2. Judge Wright's statements on the record acknowledged, but strongly and sharply disagreed with, controlling precedent. A judge has a right, and perhaps a duty, to disagree with and criticize controlling precedent, but does not have the option to decline to follow it. The appearance of justice would be better served by reassigning this case to a different judge. *See United States v. Kyle*, 734 F.3d 956, 967 (9th Cir. 2013).

4

The district court order dismissing the indictment is REVERSED and VACATED; and the case is remanded to the district court for further proceedings with instructions to the Chief United States District Judge that this case be randomly reassigned to a different judge in accordance with the local rules and general orders of the Central District of California.

**REVERSED, VACATED, and REMANDED with instructions.**